The next piece on our docket this afternoon is In Re Marriage of Woodland, 515-0040. Oh, here we go. The Attorney for Appellee has waived argument. So, Mr. Greninger, welcome. Thank you. May it please the Court, this case comes before you on post-divorce modification proceedings with regard to the joint custody agreement that was entered into at the time of the divorce back in June of 2012. It started when, and the timing is critical in this case, and the real issue revolves around the language of 610 in the IMDMA regarding modification in the case of joint custody. And to quote that language that I'm going to be referring to, in the case of joint custody, if the parties agree to a termination of a joint custody arrangement, the court shall so terminate. It's agreeing to the termination of a joint custody arrangement that I want to address. And could you do, and when you do that, could you address the order of the pleadings, which is very confusing to me in the brief. Absolutely, Your Honor, because it's very important that the order be looked at. First of all, the divorce was in June of 2012. The first thing that was filed post-divorce was by the mother, and that was a petition to modify visitation. It was couched in terms of a motion to modify joint parenting arrangement times, which was really a petition to modify visitation because the mother had had primary custody out of the divorce. So it was the equivalent of a petition to modify visitation, and that was in May of 2013. The next thing that was filed was by the father in February of 2014. He filed two things, and this is the key. The first was a motion to set aside the initial joint parenting arrangement, claiming that because the mother filed so quickly after the divorce, she really was committing a fraud. She had no intent of jointly parenting, etc., etc., and he wanted to vacate the judgment based on that, and him being awarded sole custody. He asked for that. He asked for that, yes, in the first motion that he filed. He even said, he even went so far as to say that the joint parenting agreement was invalid. And the second thing that he filed in February of 2014, and this one is the key, is a motion for a custody evaluation. Now, in the language in that motion for custody evaluation, he specifically stated a couple of things, and I quoted them in the brief. The first thing that he said is that joint custody by the parties is not viable and that sole custody by respondent and reasonable visitation by petitioner, which is the father, are in the best interests of the minor child. That was the language that he put in his petition to modify – or I'm sorry, in his motion for a custody evaluation. The invalid came in the motion to set aside. Now, the next thing that was done was – and this is an important pleading as well – is in April of 2014, there was an agreed order entered for a custody evaluation. That was an agreed order entered by the parties based on the father's motion for a custody evaluation he had filed two months earlier in February. And the last thing of significance that was filed was a petition to modify custody filed by the mother in July of 2014. Now, that's two years and one month after the judgment of dissolution had been entered. The timing is critical with respect to the agreed order for custody evaluation because of this. First of all, with regard to that agreed order in April of 2014, the only thing that the mother had filed at that point in time was a petition to modify the visitation. And the only – and what the father had filed at that point in time was the motions to set aside the initial JPA and the motion for the custody evaluation, both stating we cannot jointly parent. So then it begs the question, what was the purpose of the agreed order for the custody evaluation if the father had not filed? The father must have believed that his motion – that his request and his motion, his statements in his motion was for a custody hearing. Otherwise, he wouldn't be asking for a custody evaluation because there was no mother's petition to modify custody pending at that point in time. That didn't come until three months later. So the agreed order is very telling about what the father's thought process are with respect to that. Not only that, but the exact language, the lies, any comments by him that, oh, I really didn't mean to say that we can't jointly parent. We really can't. And that was his position at the time this case went to trial in December of 2014. At that point in time, he tells the trial judge, oh, no, no, I didn't really mean that we couldn't jointly parent. That was just an alternative plea. Well, other things occurred in between, such as the custody evaluation. The outcome of that was the evaluator said leave it with joint custody. Can't a party then backtrack on what they originally alleged and say, well, you know, we've had an evaluation and so forth. That's what he says. I'm going to go with that at trial. Yes, the custody evaluation, you're absolutely right. He did say that. But you're saying he's bound by what was said in the motion for the custody evaluation. Only because he didn't backtrack. He didn't do exactly what you're proposing. He never filed an amended petition saying, okay, we've changed our position based on this, and now we believe that we can jointly parent. But at trial, he took that position, though, right? His position at time of trial was that he was withdrawing his motion to set aside the JPA. But he never filed a motion with respect to that. That was the position that he took at the time of trial. He never said one word about the language that he had put in the motion for custody evaluation being rescinded, vacated, modified, pled in the alternative. He never did any of that. He never pled at any point in time, ever, that they could jointly parent this child. But did he testify to? Did he testify that they could jointly parent? His testimony at the time of trial was that in his position, as related by his attorney was, leave it like it is based on the evaluation, based on the decision by the joint. He never amended his pleadings with respect to that, though. But the problem is, in the statute, whenever the parties agree to that, based on the pleadings up until that point in time, the court should have immediately, summarily terminated joint custody and moved straight to a best interest hearing under 610. And that didn't happen in this case. The judge took the position that, and he may have forgotten about the fact that there had been a motion for custody evaluation that had actually resulted in an order. Not just, this isn't just pie in the sky language that he used for this custody evaluation. That actually resulted in that agreed order in April of 2014. And that was the order for a custody evaluation. It was correct. It was used as a basis for them, for the parties coming together and agreeing to appoint Dr. Cuneo, who then gave the psychological evaluation you described. I guess my question is, and this all goes to your issue that you're arguing, that once both sides filed anything that said we can't joint parent, then that's the end of it, basically, is your argument. Can't be backtracked, can't be changed at a later date. Well, if he had backtracked and modified his motion or said, I'm doing an order. Is that what you're saying? It has to be in a pleading? He can't get on the stand and testify to it? I mean, you know, the pleading that you're relying on is not a pleading asking for a change of custody. It's a pleading asking for a custody evaluation. Correct. And in that he says, and I should be awarded sole custody. Wasn't there a motion to modify custody as well? Filed by the mother, yes. And she stated at that point in time, we cannot joint the parent and I should be awarded sole custody. Okay, again, this is where I may have misunderstood. One, in February 2014, he did file a motion to set aside the joint parenting agreement. Correct. And ask for sole custody. Yes, correct. So he does file a pleading asking for sole custody and the motion for the custody evaluation is a second pleading. Asking for sole custody and saying we cannot joint the parent. Same thing. Same thing, except even stronger language. The first one said it was invalid. Okay. And then it was the mother who then turns around and says, I'm also filing a pleading asking for sole custody and asking that the court immediately, and when it got to trial, then the mother's attorney asked, and I didn't represent her at the trial, but asked that custody, joint custody be terminated and moved to a best interest hearing. Moved to a decision about what should be done as far as the best interest. Moved straight to that. And that's when the father said. Said, oh, no. Well, he said, first of all, he said two things. He said, and his argument is in the transcript, but he says, first of all, oh, no. That motion to set aside, that was just an alternative that we were pleading. Of course, he didn't say one word about his language in the motion for custody evaluation. And then the second thing he said was, but the mother's petition to modify visitation was really a petition to modify custody. And the answer to that is, no, it's not. He cited the noble case, but he miscited, I might say. And I dealt with that in my brief, too, and talked about that. But that's, I think that's where the confusion resulted in the trial judge, because I don't think he understood that that motion for custody evaluation, even if what he said about the motion to set aside language was true, the motion for custody evaluation was still out there and had been ruled upon and agreed order was entered with respect to it, where the parties agreed that they would appoint an evaluator. For what? Because if there was no custody modification pending by the father at that point in time, then what are they appointing a custody evaluator for? Because the only thing pending was the mother's petition to modify just simple visitation. She just wanted to change the time periods a little bit. It had been 50-50 at the time of the divorce. Maybe I didn't make that clear. But she wanted to change that to something a little less than 50-50, where the father would have, you know, more than every other weekend, but something different than that. And so there would have been no need for a custody evaluation unless the father truly believed that that custody was on the table, and the only person who had put it on the table would have been his motion. So that's... The statute that you're relying on says if both parties agree... Yes. ...that joint custody should be dissolved or whatever. Right. The statute doesn't say as of what time the agreement has to be. Correct. But there's some case laws that talk about that I was about to get into. Okay. I mean, situations where both sides file petitions to modify custody and both sides say no more joint custody. Yes. But this is a little different. Well, except there's a case called Spent v. Spent. Actually, two cases are in the report. The first one is Spent v. Spent, the 2003 case in the 4th District that I cited. All of the mother filed... And this one is key to the timing. All of the mother had filed a petition to modify custody that the judge had denied. After hearing, that petition constituted an agreement. When the father filed later to modify custody, that petition constituted her consent to agree to terminate joint custody such that the court had to terminate joint custody and move immediately to a best interest hearing, even though it had been denied. And our facts aren't even that strong, or stronger than that. And then the second thing that you had asked about, there was a 5th District case. No, that's not the right one. The mother quoted her answer, and that's the Melton case. By asking the court to terminate joint custody in her answer, not even her own separate petition, but in her answer to the father's petition, she agreed to the required term, termination of joint custody. That's a 1997 case, Melton v. Melton. And those two cases together, I think, lead to that joint custody should have been terminated in this case right up front. And then there's the facts of the case. And I just want to highlight some of the things that these two could not agree upon. And I think the facts confirm that these two are not candidates for joint custody. For example, and I'm just going to run through these because I list them all in the brief. The father limited the mother to one call a day, even though she wanted more than that. The mother wanted a pediatrician doctor, and the father refused. They had an argument at the hospital, which turned into a really foul scene over the mother paying the co-pay. An argument over the father wanted a vaginal exam of the daughter, and the mother did not. They had a disagreement over vaccines, booster shots, over child follow-up appointments for a dislocated elbow, over the child's counseling appointments, over what counseling was even needed. The father was not providing health insurance information to the mother. They had these tug-and-pulls where the child was enrolled, then disenrolled, then re-enrolled in one school district. They had a tug-of-war over soccer, where the father signed the child up for soccer without telling the mother, who then disenrolled the child. Unsigned her, whatever you would say. Father threatened to take the child out of the YMCA. Then they had the infamous American Girl Dial Dispute, where the dial went back and forth and there was a disagreement on that. They disagreed on the passport, who got to keep the passport. The father took the child to get the child's ears pierced without telling the mother. They had arguments over the clothes being too small, different rules for bed, computer, behavior, and diet. These two couldn't agree on any part of this child's life. So why did Dan Cunio, I mean, he's a name that we all know. What's his deal here? Well, and I didn't try the case, but as far as the psychological evaluation is concerned. Is that recorded in the record? Yeah. Dr. Cunio? I believe so, but I believe it's sealed. Yes, I did notice that in the brief, but it's sealed. Yes, and I didn't delve too much into that. I went mostly with the testimony. But basically, can you give me a bottom line? With all this disruption in the family, what his deal was? I wish I could give you more insight to that, but because I wasn't even involved in that part of the process, I know no more about the trial record. Was there a change or a modification as a result of Cunio's report? No. Judge Kelly, in the end, everything denied as far as that part was concerned, except some minor modifications over the visitation schedule. So everything stayed the same? Everything stayed the same. Except for some minor holiday changes. He didn't modify the visitation. It was a 50-50 arrangement, and I wrote about the Oro's case, and now you don't have those type of experiments, et cetera, et cetera. He denied all of that. Okay. Thank you. Your report's not sealed for us, just so you understand. I just mentioned it's probably sealed in the file. Okay. Thank you, Mr. Carmichael. Okay. The court will take a short recess.